FILED
2013 Apr-30  AM 11:44
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **T.R.C., through her mother and** <br> **next friend, Towana Boyd,** | ) <br> ) <br> ) | |
| Plaintiff, | ) <br> ) | |
| **vs.** | ) <br> ) | Civil Action Number <br> **2:12-cv-3494-AKK** |
| **MICHAEL J. ASTRUE,** <br> **COMMISSIONER OF SOCIAL** <br> **SECURITY** <br> **ADMINISTRATION,** | ) <br> ) <br> ) <br> ) <br> ) <br> ) | |
| Defendant. | | |

## MEMORANDUM OPINION

Plaintiff Towana Boyd ("Plaintiff") brings this action on behalf of her daughter, T.R.C. ("Claimant") pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA").  Doc. 1.  This court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is supported by substantial evidence, and, therefore, **AFFIRMS** the decision denying benefits.

## I.  Procedural History

Plaintiff protectively filed an application on behalf of her minor child

T.R.C. for the child's Supplemental Security Income ("SSI"), alleging a disability

onset date of June 23, 2009, due to a learning disability.  (R. 130, 134).  After the

SSA denied her application, Plaintiff requested a hearing.  (R. 65-68, 99-101).  At

the hearing on January 26, 2011, the Claimant was 10 years old.  (R. 31-62, 120).

The ALJ denied Plaintiff's claims, which became the final decision of the

Commissioner when the Appeals Council refused to grant review. (R. 1-6, 7-24).

Plaintiff then filed this action pursuant to 42 U.S.C. § 1383(c)(3).  Doc. 1.

## II.  Standard of Review

The only issues before this court are whether the record contains substantial

evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v.

Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the

correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988);

*Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. §§ 405(g)

and 1383(c) mandate that the Commissioner's "factual findings are conclusive if

supported by 'substantial evidence.'"  *Martin v. Sullivan*, 894 F.2d 1520, 1529

(11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the

evidence, or substitute its judgment for that of the Commissioner; instead, it must

review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III.  Statutory and Regulatory Framework

A claimant under the age of eighteen is considered disabled if the claimant has a medically determinable physical or mental impairment which results in marked and severe functional limitations, and which is expected to result in death, or which has lasted or is expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(C)(I). The regulations define the statutory standard of "marked and severe functional limitations" in terms of "listing-level

severity." 20 C.F.R. §§ 416.902, 416.906, 416.924(a), 416.926a(a); *see* 20 C.F.R.

pt. 404, subpt. P, app. 1 (the listings). The Commissioner has developed a specific

sequential evaluation process for determining whether a child claimant is disabled.

20 C.F.R. § 416.924. The three-step process requires a child to show: (1) that she

is not working; (2) that she has a "severe" impairment or combination of

impairments; and (3) that her impairment or combination of impairments is of

listing-level severity, that is, the impairments meet, medically equal, or

functionally equal the severity of an impairment in the listings. 20 C.F.R. §

416.924.

  If a child claimant is not working and has a severe impairment, the ALJ

must determine if the child's impairments meet or medically equal an impairment

listed in the listings. 20 C.F.R. § 416.924(a)-(d). An impairment medically equals

a listing "if it is at least equal in severity and duration to the criteria of any listed

impairment." If the claimant's impairments do not meet or medically equal a listed

impairment, the ALJ must then determine if the child's impairments are, instead,

functionally equivalent in severity. 20 C.F.R. §§ 416.924(d), 416.926a(a). For the

child's impairments to functionally equal a listed impairment, they must result in

"marked" limitations in two domains of functioning or an "extreme" limitation in

one domain. 20 C.F.R. § 416.926a(a). The ALJ considers the child's functioning

in terms of six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for himself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(I)-(vi).  If the impairments do not satisfy the duration requirements, or do not meet, medically equal, or functionally equal one of the listings in the Regulations, a finding of not disabled is reached and the claim is denied.  *See* 20 C.F.R. § 416.924(d)(2).

### IV.  The ALJ's Decision

In performing the three step analysis, initially, the ALJ determined that the Claimant has not engaged in any substantial gainful activity since her alleged disability onset date.  (R. 13).  Next, in satisfaction of Step Two the ALJ noted that the Claimant suffers from the severe impairments of "borderline intellectual functioning; learning disorder."  *Id*.  Finally, at Step Three, the ALJ concluded that the Claimant's impairments did not meet or medically equal any of the listing requirements and therefore found that the Claimant was not disabled.  (R. 13, 21).

### V.  Analysis

The court turns now to Plaintiff's contentions that the ALJ erred by failing to (1) find that Claimant met Childhood Impairment listing 112.05 for Mental Retardation, (2) give greater weight to the opinions of Claimant's treating sources,

the consultative examiner, and Claimant's mother, and (3) develop the record by re-contacting the expert who provided the psychological evaluation and obtaining an updated IQ test. *See* doc. 8 at 6-13. The court addresses each contention in turn.

A.    **Alleged failure to determine that Claimant meets the Childhood Impairment Listing 112.05 for Mental Retardation**

Plaintiff's first contention of error is that the ALJ failed to find that Claimant met the Childhood Impairment Listing 112.05 for Mental Retardation, which is "[c]haracterized by significantly subaverage general intellectual functioning with deficits in adaptive functioning." *See* 20 C.F.R. pt. 404, subpt. P, appx. 1, Part B, 112.05. Specifically, 112.05 states that "[t]he required level of severity for this disorder is met when the requirements in A, B, C, D, E, or F are satisfied," which state:

> A. For older infants and toddlers (age 1 to attainment of age 3), resulting in at least one of the appropriate age-group criteria in paragraph B1 of 112.02; or, for children (age 3 to attainment of age 18), resulting in at least two of the appropriate age-group criteria in paragraph B2 of 112.02; OR
>
> B. Mental incapacity evidenced by dependence upon others for personal needs (grossly in excess of age-appropriate dependence) and inability to follow directions such that the use of standardized measures of intellectual functioning is precluded; OR

C. A valid verbal, performance, or full scale IQ of 59 or less; OR

D. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function; OR

E. A valid verbal, performance, or full scale IQ of 60 through 70 and:
1. For older infants and toddlers (age 1 to attainment of age 3), resulting in attainment of development or function generally acquired by children no more than two-thirds of the child's chronological age in either paragraphs B1a or B1c of 112.02; or
2. For children (age 3 to attainment of age 18), resulting in at least one of paragraphs B2b or B2c or B2d of 112.02; OR

F. Select the appropriate age group:
1. For older infants and toddlers (age 1 to attainment of age 3), resulting in attainment of development or function generally acquired by children no more than two-thirds of the child's chronological age in paragraph B1b of 112.02, and a physical or other mental impairment imposing an additional and significant limitation of function; OR
2. For children (age 3 to attainment of age 18), resulting in the satisfaction of 112.02B2a, and a physical or other mental impairment imposing an additional and significant limitation of function.

*See id.*

In reviewing these requirements, while Plaintiff did not specify which specific criteria under listing 112.05 she is contending that Claimant meets, the evidence shows that Claimant does not satisfy any of these requirements.  In reaching this determination, the court notes that Plaintiff presented no evidence or

argument that Claimant satisfies listing 112.02 - Organic Mental Disorders which is associated with 112.05 (A), (E), and (F).  Moreover, there is no evidence Claimant is dependent on others for her personal needs, as required by (B).  To the contrary, the evidence shows that Claimant performs most daily functions independently, including feeding, dressing, and bathing, and helps with chores around the house.  (R. 140-149).  Consequently, Plaintiff presumably relies on 112.05(C) or (D) since she refers to Claimant's full scale IQ which is also referenced in those sections.  *See* doc. 8 at 6.  However, Claimant's full scale IQ was documented in 2009 as 71 and in 2010 as 87, whereas 112.05(C) requires an IQ of 59 or less and (D) requires an IQ of 60 to 70.  *See* (R. 176, 199, 217).  Thus, Claimant does not meet 112.05(C) or (D).

In short, based on the court's review of the record as a whole, Claimant does not meet any of the requirements for Childhood listing 112.05.  Moreover, ultimately Plaintiff has the burden of proving that Claimant is disabled.  *See* 20 C.F.R. § 416.912(c).  To the extent Plaintiff claims Claimant is disabled due to mental retardation as defined under listing 112.05, Plaintiff failed to make that showing here.  In fact, Claimant's school performed a psychological evaluation on Claimant in May 2009 to evaluate her eligibility for special education services and determined that Claimant had a "Specific Learning Disability" but ruled out

mental retardation as the primary cause of the impairment.  (R. 176-77).  In other words, the substantial evidence supports the ALJ's determination that Claimant does not meet the requirements for listing 112.05.

> **B.**    **Alleged failure to give proper weight to the opinions of Claimant's treating sources, the Consultative examiner, and Claimant's mother's testimony**

Plaintiff contends next that the ALJ "failed to show good cause why the opinion[s] of the [Claimant's] treating sources, the agency's Consultative Examiner, and [Claimant's] mother should not be given substantial or considerable weight." Doc. 8 at 6.  The court notes that "[i]t is well-established that 'the testimony of a treating physician must be given substantial or considerable weight *unless* "good cause" is shown to the contrary.'" *Crawford v. Comm'r of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 2004) (emphasis added) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)); *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  However, here, the Claimant had no actual evidence of seeing treating physicians.  Instead, the evidence consists solely from referrals to state examiners through the Claimant's disability application, diagnostic testing conducted by a pyschometrist at the request of her school when she applied for special education services, and a psychological report and speech/language evaluation conducted by the University of Alabama at

Birmingham Civitan-Sparks Clinic.  *See* (R. 169-182, 202-203, 215-228).  None of

these entities qualify as a treating source under the Act, *i.e.*,

> [a claimant's] own physician, psychologist, or other acceptable
> medical source who provides [the claimant], or has provided [the
> claimant], with medical treatment or evaluation and who has, or has
> had, an *ongoing treatment relationship* with [the claimant].
> Generally, we will consider that [the claimant has] an ongoing
> treatment relationship with an acceptable medical source when the
> medical evidence establishes that [the claimant] see[s], or ha[s] seen,
> the source with a frequency consistent with accepted medical practice
> for the type of treatment and/or evaluation required for your medical
> condition(s). We may consider an acceptable medical source who has
> treated or evaluated [the claimant] only a few times or only after long
> intervals (e.g., twice a year) to be your treating source if the nature
> and frequency of the treatment or evaluation is typical for [the
> claimant's] condition(s). We will not consider an acceptable medical
> source to be your treating source if [the claimant's] relationship with
> the source is not based on [her] medical need for treatment or
> evaluation, but solely on [the claimant's] need to obtain a report in
> support of your claim for disability. In such a case, we will consider
> the acceptable medical source to be a nontreating source.

20 C.F.R. § 416.902 (emphasis added).  In fact, according to the record, the

Claimant visited each of the medical sources on single occasions.  In other words,

there are no "ongoing treatment relationships," and, as such, none of the medical

sources are entitled to the controlling weight of a treating physician.

However, the medical sources are "acceptable medical sources" who can

provide evidence to establish an impairment.  *See* 20 C.F.R. § 416.913.  In fact,

the ALJ reviewed each opinion and provided reasons for the weight he accorded

each.  For instance, the ALJ gave "little weight" to the school psychometrist Marilyn H. Wisely's  opinion "that the claimant was easily frustrated, had some trouble with reading comprehension, and noticeable trouble reading and filling out tests."  (R. 15).  According to the ALJ, Wisely's opinion was inconsistent with her findings because her "observations and the other evidence of record do not support Ms. Wisely's conclusion that, in light of these impediments, the claimant's test results nevertheless reflect her actual abilities. As discussed above, the claimant's poor scores on diagnostic tests, based on poor effort and easy frustration, negates the accuracy of these tests and does not show the claimant has a disabling impairment."  (R. 15).  The Act provides that, generally, an ALJ must consider the opinions of "[l]icensed or certified psychologists[,] [i]nclud[ing] school psychologists, or other licensed or certified individuals with other titles who perform the same function as a school psychologist in a school setting, for purposes of establishing mental retardation, learning disabilities, and borderline intellectual functioning only."  20 C.F.R. § 416.913.  However, when evidence, including opinion evidence, is inconsistent, the ALJ has no duty to consider it. *See* 20 C.F.R. § 416.920b.  Based on the court's review of the evidence, the court finds no error in the ALJ's assessment of Wisely's opinion.

The ALJ gave the consultative examiner, a licensed psychologist, Dan

Lowery, Ph.D's opinion "some weight." (R. 15). Dr. Lowery performed a Wechsler Intelligence Scale for Children - Fourth Edition (WISC-IV) on Claimant in August 2009 and determined the following IQ: Claimant's Verbal Comprehension Index - 73 - Borderline, Perceptual Reasoning Index - 79 - Borderline, Working Memory Index - 62 - MMR, and Processing Speed Index - 83 - Low Average. (R. 199-200). While Plaintiff argues that the ALJ should have given Dr. Lowery's evaluation results greater weight, the ALJ noted correctly that Dr. Lowery found that "the claimant put marginal effort into taking the test and found the claimant's results likely underestimated her intellectual function." (R. 14, 199-200). However, the ALJ gave Dr. Lowery's opinion some weight since it supported that Claimant does not have a marked impairment in any functional domain. (R. 14).

Generally, when considering an examining, non-treating medical opinion, "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion." 20 C.F.R. § 404.1527(c)(3). Additionally, "the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion." *Id*. at § 404.1527(c)(4). Based on the court's review of the

record, the court finds no error in the ALJ's assessment of Dr. Lowery's findings. In fact, given Dr. Lowery's findings and opinion that "Claimant put marginal effort into taking the test," the court is confounded by Plaintiff's contention that giving Dr. Lowery's opinion greater weight would help her.  After all, giving Dr. Lowery's finding more weight would result in a conclusion that Claimant's IQ scores "underestimated her intellectual function," *i.e.*, that Claimant is more intelligent than her scores showed.

The rest of the record also does not help Plaintiff's contentions.  For example, state examiner, Dr. Robert Estock, M.D. reviewed Claimant's records in September 2009 and opined that Claimant is not disabled and that she has no marked impairments in any domain of function.  (R. 202-08).  Dr. Estock noted that Claimant had "[n]o problems paying attention or sticking to a task...no problems talking clearly..no communication problems [...though Claimant's ability to learn is limited," that Claimant's "mother reports no problems with behavior or attention," and that Claimant's "WISC scores which are considered invalid fell within the low average to borderline range of IF."  (R. 207).  The ALJ gave Dr. Estock's opinion the "greatest weight" finding that "his medical opinions are well-supported by the evidence of record, are based on [his] full access to the claimant's medical record, and reflects his experience providing medical opinions

in the context of disability review." (R. 15). The court finds no error in the ALJ's

assessment of Dr. Estock's findings.

Perhaps because of the lack of medical evidence in favor of her claim,

Plaintiff also contends that the ALJ erred by giving "very little weight to [the

Claimant's mother's] testimony." Doc. 8 at 9. According to Plaintiff, the ALJ

"fail[ed] to note any specific inconsistency between the mother's testimony,

[Claimant's] testimony, [Claimant's] school records, [Claimant's] own treating

sources and the report of the Consultative Examiner." *Id*. The court disagrees

because the ALJ gave the Claimant's mother's testimony "some weight." (R. 15).

Moreover, a child's mother is clearly not an "acceptable medical source" as

defined in 20 C.F.R. § 416.913(a), and, thus, is not entitled to the automatic

substantial or considerable weight given to treating physicians or the weight given

to other medical professionals. *See* SSR 06-03p. Instead, a claimant's mother is

categorized as "other non-medical source" that the ALJ "*may* also use...to show

the severity of [the claimant's] impairments(s) and how it affects [the claimant's

ability to work, or if [the claimant is] a child, how [the claimant] typically

function[s] compared to children [his] age who do not have impairments." 20

C.F.R. § 416.913(d)(4) (emphasis added). Significantly, a mother's testimony,

along with other non-medical sources, cannot establish the existence of a

medically determinable impairment, but may only provide insight into the severity of a claimant's impairment or how it affects his ability to function.  *See* SSR 06-03p; 20 C.F.R. §§ 416.913(d) and 404.1513(d).

After reviewing the evidence, the ALJ determined that "[t]he allegations of the claimant's mother are generally credible, but do not prove that the claimant has a marked limitation in any of the domains of functioning."  (R. 15).  For instance, regarding the "acquiring and using information" domain, the ALJ found that "[t]he claimant's mother stated the claimant has problems learning and receives additional help in school.  At the hearing, the claimant stated she received additional help but does not have any trouble in school. . . I also find the testimony of the claimant and her mother support my finding and Dr. Estock's opinion that the claimant's impairment in this area is less than marked."  (R. 16).  The ALJ made similar findings regarding the claimant's mother's testimony in each of the other domains.  *See* (R. 17-20).  Accordingly, it is clear the ALJ reviewed and considered the claimant's mother's testimony and found that it did not support the Claimant's contention that she had a disabling impairment.

Having reviewed the entire record, the court finds no error with the weight the ALJ gave to the various opinions.  Moreover, Plaintiff failed to show how giving a greater weight to any of the opinions would have changed the ultimate

result. Therefore, the substantial evidence supports the ALJ's determinations

regarding the weights given to the opinions.

   **C.    Alleged failure to fully develop the record by re-contacting the
          expert who provided the psychological evaluation and obtaining
          an updated IQ test**

   Plaintiff's last contention of error is based on her claim that the ALJ erred

by "failing to fully develop the record by seeking further medical review," "re-

contact[ing] the expert who provided the Psychological Evaluation for any

question(s) regarding the validity of the IQ score," "hav[ing] a Medical Examiner

provide testimony at the hearing," and obtaining an updated IQ test.  Doc. 8 at 10-

13.  Generally, an ALJ has "a basic obligation to develop a full and fair record."

*Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).  However, the ALJ is

not obligated to automatically obtain testimony from a medical expert.  Rather, the

ALJ "*may* ask for and consider the opinion of a medical . . . expert concerning

whether ...[a claimant's] impairment(s) could reasonably be expected to produce

[his or her] alleged symptoms."  20 C.F.R. § 404.1529 (emphasis added).

Critically, the ALJ is not required to order additional medical opinion when, as

here, the record contains sufficient evidence for the ALJ to make a disability

determination.  *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1269 (11th Cir.

2007) (citation omitted).  Indeed, the ALJ considered the Claimant's entire record,

as discussed *supra*, to reach a finding that Claimaint is not disabled.  Moreover, based on this court's review of the record, the ALJ committed no error by failing to obtain another IQ test since the record contained two recent tests and there was no indication that another test would return a different result.

The ALJ also committed no error by failing to re-contact the experts that facilitated the psychological evaluations and IQ tests.  The ALJ is only obligated to obtain a clarification when a consultative physician's report is "inadequate or incomplete" such that the ALJ cannot make an informed decision regarding whether a claimant is disabled.  *See Davison v. Astrue*, 370 Fed.App'x 995, 997 (11th Cir. 2010); *Vesty v. Astrue*, 353 Fed.App'x 219, 225 (11th Cir. 2009);  20 C.F.R. § 416.919p(a)-(b).   In such a case, the ALJ must attempt to develop the record further by contacting the treating physician to determine whether the required information is available.  *See id.* Again, here, there was no indication the ALJ needed clarification or that the consultative examiner's report was inadequate or incomplete.  As such, the court finds no error.  The findings the ALJ made concerning his evaluation of the medical reports were sufficiently extensive for the ALJ to make a determination that Claimant is not disabled.  Finally, there is no requirement that the ALJ have a medical examiner testify at the disability hearing.  *See generally,* 20 C.F.R. § 416.101 *et seq*.  Therefore, the ALJ committed no error

by failing to include such testimony.

In the final analysis, Plaintiff failed to show how obtaining additional medical expert testimony, a new IQ test, or re-contacting the experts would have aided the ALJ to make an informed decision, and how the purported failure to develop the record prejudiced the Claimant. *See* 20 C.F.R. § 416.912(c). Therefore, the substantial evidence supports the ALJ's determination that Claimant is not disabled.

### VI. Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that the Claimant is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination. Therefore, the Commissioner's final decision is **AFFIRMED**. A separate order in accordance with the memorandum of decision will be entered.

**Done** the 30th day of April, 2013.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE